HILARY KAWECKI, CONSERVATOR (PERSON OF SOPHIE TRENT-STEVENS), ET AL.
*v.* WILLIAM J. SAAS, SR.,
ET AL.
(AC 32630)

Gruendel, Robinson and Schaller, Js.

Argued October 14—officially released December 20, 2011

*Zbigniew S. Rozbicki,* for the appellant (named plaintiff).

*Vincent T. McManus, Jr.,* for the appellee (named defendant).

### Opinion

ROBINSON, J. The named plaintiff, Hilary Kawecki, as conservator of the person of Sophie Trent-Stevens, appeals from the judgment of the trial court granting a motion to dismiss the complaint as to him.[1] He claims on appeal that the court erred in concluding that he

---

[1] Renee Fahey Gentile, as conservator of the estate of Trent-Stevens, is also a plaintiff in the underlying action, but is not a party to this appeal.

lacked standing as the conservator of the person of Trent-Stevens to assert the claims raised in the complaint, which relate to the estate of Trent-Stevens, not to the person.[2] We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. On August 20, 2007, Kawecki was appointed by the Probate Court for the district of Meriden as conservator of the person of Trent-Stevens. Attorney Renee Fahey Gentile was appointed as conservator of the estate of Trent-Stevens on June 30, 2008. In March, 2009, Fahey Gentile and Kawecki brought a six count complaint on behalf of their ward against the defendants, William J. Saas, Jr., and William J. Saas, Sr. Saas, Jr., had been the appointed conservator of the estate of Trent-Stevens from November 15, 2006 to June 23, 2008, at which time he was removed by order of the Probate Court. The plaintiffs allege in the complaint that, during the time in which Saas, Jr., was acting as conservator of the estate, he was employed by his father, Saas, Sr., at his father's accounting firm. They further alleged that Saas, Sr., appeared with his son before the Probate Court and made representations that the affairs of the estate were being handled using proper

---

[2] As a preliminary matter, we note that Kawecki has attempted to frame the issue on appeal as whether the trial court's action in dismissing the complaint deprived his ward of her rights to due process, equal protection of the law and access to the courts under both the state and federal constitutions. Kawecki, however, has failed to do much more than simply assert those constitutional claims. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim receives only cursory attention in the brief without substantive discussion, it is deemed to be abandoned." (Internal quotation marks omitted.) *Foster* v. *Foster*, 84 Conn. App. 311, 324, 853 A.2d 588 (2004) (declining to review inadequately briefed federal constitutional claim); see also *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004) (deeming state constitutional claim abandoned because defendant had not provided independent analysis of constitutional issue). Because Kawecki has failed to adequately brief his constitutional claims, we decline to review them, and we limit our review to whether the court erred in granting the motion to dismiss on the ground that Kawecki lacked standing.

accounting and inventory procedures. According to the allegations in the complaint, Saas, Sr., led the plaintiffs and the Probate Court to believe that Saas, Jr., was a member of his father's accounting firm although Saas, Jr., allegedly is not an accountant. The complaint contends that Saas, Sr., became a de facto conservator of the estate by assuming joint responsibility with Saas, Jr.

The first five counts of the complaint were brought by the plaintiffs against both of the defendants. Count one sounds in breach of fiduciary duty and alleges that the defendants failed to perform their statutory duties by failing to properly safeguard the assets of the estate. Count two sounds in conversion and alleges that the defendants wrongfully misappropriated and converted estate funds and assets, including jewelry, cash and securities. Count three alleges a breach of the implied covenant of good faith and fair dealing. Count four sounds in fraud and misrepresentation. Count five alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b et seq. The sixth count, which the plaintiffs brought against Saas, Sr., only, sounds in professional malpractice.

On March 10, 2010, Saas, Sr., filed a motion to dismiss the complaint as to the claims of Kawecki on the ground that Kawecki lacked standing to prosecute the claims raised in the complaint. On June 2, 2010, the court issued a memorandum of decision granting the motion to dismiss, in which it concluded that the plaintiffs had "not met their burden of establishing Kawecki's standing."[3] The action remains pending as to the claims

---

[3] Although the motion to dismiss was brought only by Saas, Sr., we construe the trial court's judgment as disposing of Kawecki's case against both defendants. See *de Repentigny* v. *de Repentigny*, 121 Conn. App. 451, 462–63, 995 A.2d 117 (2010) (construction of judgment is question of law and effect should be given to both that which is expressly set forth as well as that which is implied). The court's intention to dismiss Kawecki's action against both defendants is evidenced by the court's statement in the judgment file that judgment on the motion to dismiss was rendered "in the defendants' favor." The parties have not claimed that the trial court's judgment did not dismiss all of Kawecki's claims against both defendants.

of the coplaintiff Fahey Gentile. The plaintiffs filed a motion for reargument on June 21, 2010. The court denied the motion for reargument, notice of which issued on August 9, 2010. The present appeal by Kawecki followed.

Our standard of review of the granting of a motion to dismiss is well settled. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Whether the trial court has subject matter jurisdiction is a question of law over which we exercise a plenary standard of review." (Internal quotation marks omitted.) *Wright* v. *Teamsters Local 559*, 123 Conn. App. 1, 4–5, 1 A.3d 207 (2010).

"The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). [I]t is the burden of the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *May* v. *Coffey*, 291 Conn. 106, 113, 967 A.2d 495 (2009). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) Id., 112.

We first consider whether Kawecki has standing on the basis of statutory authority to raise the type of claims alleged in the underlying action. "A conservator has only such powers as are expressly or impliedly given to him by statute." (Internal quotation marks omitted.) *Murphy* v. *Wakelee*, 247 Conn. 396, 406, 721 A.2d 1181 (1998). "The statutory duties of a conservator are clearly defined in General Statutes § 45a-655, which delineates the duties of a conservator of the *estate*, and General Statutes § 45a-656, which prescribes the duties of a conservator of the *person*." (Emphasis in original.) *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 539–40, 778 A.2d 93 (2001). Our construction of the relevant statutory provisions is guided by well settled principles of statutory construction. See also General Statutes § 1-2z.

A conservator of the estate is defined by statute as one appointed "to supervise the financial affairs" of a conserved person. General Statutes § 45a-644 (a). General Statutes § 45a-655 (a) provides in relevant part that the conservator of the estate, in addition to compiling an inventory of the estate's assets, "shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the conserved person and those members of the conserved person's family whom the conserved person has the legal duty to support and to pay the conserved person's debts, and *may sue for and collect all debts due the conserved person. . . .* " (Emphasis added.)

By contrast, the conservator of the person is defined as someone appointed "to supervise the personal affairs" of a conserved person. General Statutes § 45a-644 (b). General Statutes § 45a-656 (a) provides that the duties and authority of the conservator of the person may include the following: "(1) The duty and responsibility for the general custody of the conserved person;

(2) the authority to establish the conserved person's residence within the state, subject to the provisions of section 45a-656b; (3) the authority to give consent for the conserved person's medical or other professional care, counsel, treatment or service; (4) the duty to provide for the care, comfort and maintenance of the conserved person; and (5) the duty to take reasonable care of the conserved person's personal effects."

The complaint in this case seeks compensatory damages and attorney's fees based on allegations that a former conservator of the estate did not properly perform his statutory duties, mismanaged the estate and converted assets of the estate for his own benefit. A plain reading of the statutory duties described in § 45a-656 reveals that the conservator of the person generally is tasked with ensuring that the comfort, safety and health care needs of the conserved person are met. There is no express or implied provision authorizing the conservator of the person to bring an action on behalf of the conserved person to collect debts owed the estate or to otherwise protect the ward's estate. The statutory duty to recover debts due to a conserved person's estate expressly is left to the discretionary authority of the conservator of the estate. See General Statutes § 45a-655 (a). Although we are cognizant of the fact that § 45a-656 does not contain an exhaustive list of the duties of the conservator of the person and does not expressly prohibit the conservator of the person from ever bringing an action on behalf of the ward, when read in conjunction with § 45a-655, we conclude that the conservator of the estate is the proper party to request adjudication of the issues raised in the complaint. As previously noted, a conservator's powers are limited to those expressly or impliedly provided by statute; see *Murphy* v. *Wakelee*, supra, 247 Conn. 406; and Kawecki, as conservator of the person of Trent-Stevens,

lacks the statutory authority to establish standing to prosecute the underlying complaint.

Kawecki also failed to demonstrate that he had standing on the basis of classical aggrievement. "The fundamental test for establishing classical aggrievement is well settled: [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision . . . . Second, the party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." (Internal quotation marks omitted.) *Trumbull* v. *Palmer*, 123 Conn. App. 244, 251, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010). Kawecki's interest in the underlying litigation is not personal, but as conservator of the person of Trent-Stevens. Further, as we have already determined, the subject matter of the complaint does not fall within Kawecki's statutory responsibilities as conservator of the person, and, therefore, he has no legal interest in the litigation on the basis of that role. Because Kawecki cannot demonstrate a specific personal and legal interest in the underlying litigation, he is not classically aggrieved.

For the foregoing reasons, we agree with the court's decision that the claims raised in the underlying complaint do not relate to the person of Trent-Stevens, but to Trent-Stevens' estate, and that Kawecki is not authorized by statute to bring an action on behalf of the estate and is not otherwise aggrieved. Accordingly, Kawecki lacks standing to invoke the court's jurisdiction, and the court properly granted the motion to dismiss the complaint as to him.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The determination that Kawecki lacks standing as a party plaintiff to litigate the underlying action in no way precludes him from otherwise exercising his duties as conservator of the person with respect to the litigation.